## Carleton *et al. v.* Osgood *et al.*

A forthcoming bond without security, or with a fictitious security, is absolutely void, and does not affect the lien of the original judgment.

Where property was sold under two executions, and the judgment from which one emanated was two days older than the other, the court directed the money to be appropriated to the oldest judgment.

IN ERROR from the circuit court of the county of Claiborne.

This case comes up from the judgment of the circuit court of Claiborne county, on a motion made by Osgood & Co. that certain money collected by the sheriff, by the sale of the property of Parkinson & Sevier, be applied to an execution in favor of said Osgood & Co. against said Parkinson & Sevier, in preference to other executions, one of which was in favor of the plaintiffs in error.

The record disclosed this state of facts. On the 6th of June, 1838, Nelson Carleton & Co. recovered judgment against Parkinson & Sevier. On the 8th of June, 1838, Osgood & Co. recovered a judgment against the same defendants. It appeared that a levy was made under the execution of Osgood & Co. and a forthcoming bond given, which was forfeited at November term, 1838. At may term, 1841, this bond was quashed. It appeared, also, that a bond was given in the case of Carleton & Co. returnable to the same term, but this bond has been lost by accident. It was proven that on this bond there was no security taken, the name of a fictitious person being signed to it by the sheriff, and it was signed only by part of the defendants in execution. Nor was there any evidence that a levy was made in this case, or that it was returned forfeited. The only evidence on this subject was the entry made by a deputy clerk in one of the books of his office,

Carleton *et al. v.* Osgood *et al.*

which entry contains the names of the parties, with the amount of fees, with these additional words: "Bonded—J. Johnson security." The proof shows that the name of "J. Johnson" was fictitious.

Thrasher for plaintiff in error.

The judgment of Nelson Carleton & Co. *v.* Parkinson & Sevier, was rendered on the 6th of June, 1838, and the judgment of R. H. Osgood & Co. on the 8th of June, 1838.   Executions issued on each of the judgments, and were both levied on the same property, to wit: the property of Parkinson & Sevier; which the sheriff sold under both executions at the same time.   The case of Nelson Carleton & Co. being a venditioni exponas, and that of R. H. Osgood & Co. a fieri facias, to November term, 1841.   The case of R. H. Osgood & Co. was bonded to November, 1838, which bond the court quashed on the 3d of June, 1841, for the purpose of extending the lien back to the date of the judgment.   The property sold for forty-eight hundred and forty dollars, enough to satisfy the first four executions, and leaving a balance, but not enough to satisfy the judgments of both Nelson Carleton & Co. and R. H. Osgood & Co.   It is admitted that the judgment of Nelson Carleton & Co. was two days older than the judgment of R. H. Osgood and Co., but the defendant in error alleges that it was bonded to November, 1838, and that it raised the lien of the original judgment; while the plaintiffs in error contend, first—that it never was bonded, or that if it was, that the bond was forged and was a nullity, which could not raise the lien of the original judgment; second—that the giving of a forthcoming bond and forfeiture does not raise the lien of the old judgment, as it regards the property of the principal in the judgment—that when the money is made by a sale of the principal's property, that the lien extends back to the date of the original judgment; third—that if the giving and forfeiting of a forthcoming bond raises the lien of the old judgment, as it regards the property of the principal—that then the case of R. H. Osgood & Co. was bonded to November, 1838, and the court could not legally quash the bond in 1841, to give it a prior lien, which would affect the rights of third persons.

First, then, it is contended by the plaintiffs in error, that the

Carleton *et al. v.* Osgood *et al.*

case of Nelson Carleton & Co. never was bonded; that the forged bond, of which there is some evidence in the record, was a nullity and absolutely void. Voidable acts are good until set aside or avoided; but void acts are considered as though they never existed, and affect no person. An illegal bond, taken by an officer *colore officii*, is absolutely void. 19 Johns. Rep. 233.

A thing is void which is done against law at the time of doing it, and no person is bound by the act. 18 Johns. R. 527.

A sale under a void fieri facias will not even protect an innocent purchaser. 1 Cowen, 711.

There is no evidence of record that the case was bonded. No bond could be found in the clerk's office, nor execution upon which a bond was taken; no record of any judgment on bond, or record of the bond itself, could be found, though diligent search had been made. The only trace or entry in the clerk's office indicating that a bond had been taken, was the scrap on the docket in the clerk's office, headed "Executions to Nov. 1838," which is transcribed in the record verbatim. This is not such a record as the clerk was required by law to keep, and it proves nothing. The entry was admitted to be in the hand writing of a deputy by the name of Dowing. The statute H. & H. 644, sec. 47, requires the clerk to enter in a book or docket, to be kept by him for that purpose, a list of all executions by him issued, specifying therein the names of the parties, the amount of the judgment or decree, interest and costs, distinctly, in such executions, the name of the person to whom it is delivered, to what county directed, the date when issued, and the return day thereof; and, when the same is returned, shall, without delay, record the return at large on the same page or folio on which the execution is entered. This entry does not show the amount of the judgment, or any judgment, to whom delivered, or to what county directed, or the date when it issued. If it shows the date of the issue, it is the 9th January, 1837, before any judgment was entered in the case. In fine, it does not conform to the law in any one single particular. The words "bonded, J. Johnson security," is no return, and of itself proves nothing. If the return is to be recorded at large, then a levy was necessary before taking a bond, and the return should be signed by the sheriff, and specify that the bond was forfeited, or it

is no return. But there is no record evidence that the case was ever bonded. What is the parol evidence? It is equally defective, and indeed conclusive that no bond was given in the case.

John B. Coleman, Esq. was examined, who stated that at the May Term, 1839, he was employed by Parkinson and Sevier to quash bonds; that from a memorandum in his possession, he then examined the case of Nelson Carlton & Co., and that he found a forthcoming bond in the case by Parkinson & Sevier, Pierson, Bush, and H. O. Anderson, (all principals in the original judgment) with Jonathan Johnson as security. This bond lacked the names of three of the principals in the judgment, to wit: Wells, Person, and H. Anderson. Witness Coleman further stated that he knew no person in Claiborne county, nor in the state, by the name of Jonathan Johnson.

Martin A. Hopkins deposed, that he was a deputy sheriff, under R. J. Bland, sheriff of Claiborne county, at November term, 1838, of said court, and that as such, he acted for R. J. Bland, sheriff; that he well recollected the execution of Nelson Carlton & Co. *v.* Parkinson & Sevier; that it was returned at November term, 1838, with a forfeited bond, signed by all the parties to the judgment except Wells and Person and H. Anderson; the name of J. Johnson was in said bond as security; that the name of Jonathan Johnson was a fictitious name. signed to said bond; that no such name as J. Johnson or Jonathan Johnson ever lived in the county, to the best of his knowledge; that he well recollected the case, and stated of his own knowledge that J. Johnson never signed the bond.

The fact is, that it was not pretended that there ever was such a person as J. Johnson, or that the bond was signed by him, but it was contended that the sheriff had so returned it, and that the return was conclusive. The bond could not be found, nor the execution, for the purpose of having the bond quashed, and the plaintiff in error elected to take out execution on the original judgment, upon which he claims that the money was made, while the clerk or defendants procured an execution to issue on the pretended bond from the entry on the execution docket, but the execution on the bond issued against all the parties to the original judgment, including J. Johnson, security. While the parol evidence proves that Wells and Person and H. Anderson were not on the bond,

Carleton *et al. v.* Osgood *et al.*

this shows the impropriety of giving to the forgery the dignity of a bond from the entry in the execution docket. The same return is made on both executions.

The law, H. & H. 653, sec. 72, which authorizes the sheriff to take bond, requires him to take, in the bond, sufficient secu ity. If he has taken a bond without security, then it was unauthorized and void. If he forged the name of a security, (of which there is no doubt,) then he took no bond, for security was necessary to make it a bond. A bond was doubtless intended by the law to afford the plaintiffs additional security for the indulgence forced on them by operation of law, available and effective, but can argument be necessary to prove that a forged bond is void? Certainly not. A bond signed in blank, and filled up afterwards, is void, though regularly signed, because it lacks the requisite of a delivery after being filled up, and has been repeatedly so decided. 4 Randolph's Rep. 196, 448; 1 Washington, 73; 1 Hill's So. Car. Rep. 267; 2 Dev. No. Car. Rep. 374; 5 Monroe's Rep. 25; 3 Bibb, 361; 1 Yerger's Rep. 69, 149; Ohio Cond. Rep. 167; Sheppard's Touchstone, 2 Brockenborough's Rep. 64. A forged bond, however, is void, not only for want of delivery, but for want of the assent of the party whose name has been forged. But it is contended that the words "bonded, J. Johnson, security," was the sheriff's return, and that we are to presume every thing else, and that such return is conclusive.

The return of the sheriff, even if it was a regular return, and signed, showing all that was necessary, is at most but prima facie, Watson on Sheriffs, 72; 11 East, 297; 4 Conn. Rep. 80; 4 Greenleaf, 230; 3 Randolph, 554. That the return is not conclusive, has been expressly decided in 2 Leigh's Rep. 157; 4 Dana, 153; 5 Howard, 79. There is no record of the bond, and if the defendant in error can show a bond by parol, it is certainly competent by parol to show that it was a nullity, and void.

The second point in the case is, that the giving of a forthcoming bond and forfeiture, does not raise the lien of the original judgment, as it regards the property of the principal in the judgment. when the money is made by a sale of the principal's property. This question, it is thought, has never been decided by the court, or no attempt would be made to discuss it in the case at bar. A

25*

Carleton *et al. v.* Osgood *et al.*

careful analysis, however, of the former decisions of the court will test the point.   It is contended that the act of 1824 gives to judgment creditors a lien on all the property of the debtor, from the time of the rendition of the judgment, which can only be defeated by some act of the creditor deemed fraudulent against other creditors; that when the sale of property is by virtue of several executions, the court will direct the money to be applied to the elder judgment.   Such are the words of the court in the case of Smith *v.* Everly, 4 How. 178.   The giving of a forthcoming bond and forfeiture is not the act of the judgment creditor, it is a stay of execution forced on him by operation of law and the act of the party, in which he receives the forthcoming bond, not as payment, but as additional security for the indulgence.   The act of 1824 has never been repealed nor modified.   The case of Burny *v.* Boyett was an application to apply money.   Both judgments were rendered on the same day, but there was nothing in the record to show which was entered first.   The court say: " The act of 1824 makes all judgments a lien from the time of entering the judgment, but it does not follow that each must be satisfied in proportion to the amount."   1 How. 41.   There is no act of the legislature, nor decision of the court, which favors a *pro rata* distribution; but the courts have uniformly decided in favor of the prior lien.   In the case of Smith *v.* Ship, the court say: "Where several judgments are entered up against a defendant on the same day, that which first appears on the minutes obtains the prior lien."   1 How. 234.   In Lynn *v.* Gridly, the court decide that a sale under a junior execution does not affect the lien acquired by an elder.   Walker's Rep. 548.   In Biggam *v.* Merritt, the court decided that where two judgments were entered on the same day, that preference would be given to the one first entered, and that the act of 1824 required them to look into the fraction of a day, to ascertain which was entered first.   Walker's Rep. 430; 1 Cowen, 592.   In aid of the foregoing decisions, the case of Rankin *v.* Scott, 12 Wheaton, 177, by Judge Marshall, is thought to be conclusive.   In that case, the court say, that the principle is believed to be universal, that a prior lien gives a prior claim, which is entitled to prior satisfaction out of the subject it binds, unless the lien be displaced by some act of the party holding it, and such is the language of the court in the

Carleton *et al. v.* Osgood *et al.*

case reported in 4 Howard, 178.   The act of 1824, in connection with the foregoing and uniform train of decisions, establish the fact, that nothing but actual payment or some act of the judgment creditor, can raise the lien of the original judgment, as it regards the property of the principal.   No judgment is ever entered on the forfeited bond, either by the court or clerk.   The act of 1824 gives the lien.   When does it commence?   At the entering of the judg_ ment.   There is no other period in the history of a judgment once entered, at which the lien can attach.   If the lien is destroyed by the forfeiture of a bond, when does it recommence?   What other kind is specified in the act of 1824?   If there is a lien after the forfeiture of the bond, it is the lien which attached at the entering of the original judgment, and which could not have been destroyed, for the act of 1824 confers no power of creating new liens. Indeed it is hard to conceive upon common law principles, how a judgment on a forfeited bond, which is of no higher dignity than the original judgment, can destroy its equal; though the taking of security by a party himself of a higher nature, might have that effect.

It is not contended for a moment that the lien, as it regards the property of the security in the bond, extends beyond the forfeiture; for it would be absurd to say, that judgment was a lien on a person's property before that person was a party to the judgment; but an execution shows the principal, and who are the securities, and the return of the sheriff shows whose property was sold on the executions, when the lien as it regards the property of the surety commences with the forfeiture of the bond, when he became a party to the judgment and its incident of lien; but as it regards the property of the principal the lien extends back to the entering of the original judgment.   No other legal or equitable construction can be given to the act of 1824, in connection with the forthcoming bond law, without impairing the operation of one or of the other, and frequently the rights of innocent persons.   The sheriff in general makes all his bonds forfeit on the first day of court.   Then if the forfeiture of the bond destroys the lien of the original judgment, how is the money to be applied.   The law does not countenance a pro rata distribution, and all the judgments on bond are of the same date, though the original judgment in some are or

may be years older than others. Are all to be equal? if so, a difficulty arises in applying the money, and injustice is done to those who hold the old judgments, and who have been delayed by the parties themselves; but the sheriff can and frequently does take a bond to forfeit a month before court, and one bond to forfeit before another on judgment rendered on the same day, then if the forfeiture of the bond raises the lien of the original judgment the sheriff has it in his power to change the rights of parties, to take from one and give to another; in fine, there is no end to the difficulties which would arise under such a construction, while no difficulty or injustice could take place under the other; and yet it is contended, from a misconstruction no doubt of some of the decisions of this court, that the forfeiture of a bond raises the lien of the original judgment as it regards the property of the principal, a point not yet decided. There is perhaps four decisions which have been so construed by some. The first is the case of Stewart *v.* Fuqua, comprising seven lines in Walker's Reports, 175, by Judge Ellis, in which he says, "there can be no doubt that a forthcoming bond, while the execution remains unquashed, is a complete satisfaction of the judgment, he thinks the original execution in the case cannot have a lien upon the property, for it is satisfied in point of law so soon as the bond is executed." At the time this judgment was rendered, judgments did not bind property, but the execution. It is hard to understand a decision so laconic; but it is evident that the judge intended to say, that the original execution was satisfied by the bond, and that an execution could not issue on the original judgment, but that a new execution must issue on the bond. The second is the case of Connel *v.* Lewis, Walker's Rep. 251, in which the court say, "that a forthcoming bond forfeited, raises the lien of the first execution on which it is taken, and is a satisfaction of the judgment, until such bond shall be quashed." This and the case of Stewart *v.* Fuqua, were both judgments rendered previous to 1822, before the passage of the act of 1824, when the execution was a lien, but a judgment was not. Neither case has any application under the act of 1824. The third case is that of Dixon *v.* Davis, 1 Howard, 64, in which the court say, " it has been decided that the forfeiture of a bond is a satisfaction of the

prior judgment." 1 Howard, 64.   This decision is doubtless cor-
rect, so far as it goes, or was intended to go, to wit, that after the
forfeiting of a forthcoming bond that execution could not issue on
the original judgment, but must issue on the forfeited bond; but
the court by no means say that it destroyed the lien of the original
judgment, as it regards the property of the principal, nor does the
decision authorize such an inference; that question was not before
the court.   The fourth case is that of McNutt *v.* Wilcox, in which
the court say, "it is now the settled rule that the forfeiture of a
forthcoming bond is a satisfaction of the original judgment, but
that it cannot be pretended that the giving of a bond and for-
feiture is a payment; it is mere security for the debt."   3 Howard,
420.   It doubtless is a satisfaction of the original judgment, so far
as it regards any new process; execution cannot issue on it, but
must issue on the bond.   This is the meaning of the court, and
not that the lien created by the *entry* of the original judgment is
destroyed, no such question has ever been decided by the court.
The execution on a forfeited bond recites the old judgment, the
amount, the day it was *entered,* and then commands the sheriff to
make that amount, with interest from the day it was *entered.*—
The execution itself would seem conclusive that the original
judgment, with its incidents of interest and lien, was still to be
enforced.

The last and remaining point is, that the court quashed the
forthcoming bond in the case of R. H. Osgood & Co. after the
return term, to wit, in June, 1841, to extend the lien to the original
judgment, provided it had been raised by forthcoming bond for-
feited, &c.   4 Howard, 363.

Ellett, for defendant in error.

I.  The first error assigned is that the original judgment of Nelson
Carleton & Co. was two days older than that of R. H. Osgood, &
Co., and the money being made out of the property of the original
defendants, the lien extends back to the date of the original judg-
ment, and therefore Nelson Carleton & Co. ought to have the money.

If the execution of Nelson Carleton & Co. was bonded, then the
defendant's counsel is bound to consider it a settled question in this

Carleton *et al. v.* Osgood *et al.*

court that the original judgment was satisfied, 5 How. 200; 1 How. 98. If the original judgment was "satisfied," "extinguished," "merged," as the court have said it is, then it cannot be referred to as a subsisting lien, much less as evidence of the time from which the lien of another and different judgment takes effect.

II. The *second* and *fifth* grounds of error are the same, to wit; that the execution of Nelson Carleton & Co. never was bonded, or if it was that the bond was a nullity, and could not raise the lien of the original judgment.

The fact that a bond was taken, and returned forfeited, is fully proved by the evidence in the bill of exceptions, and the plaintiffs in error would seem to be estopped from denying it, from the fact that one of the very executions upon which they claim the money recites the bond, and is predicated upon it.

The only questions seem to be, first, whether loss of the execution and bond will, "*per se*," restore the parties to their original judgment; and second, whether the act of the sheriff in putting a fictitious name to the bond as surety, will render the bond a nullity.

As to the first point it is submitted that the loss or destruction of a record does not destroy the judgment. The judgment is the act of the court, the record is the evidence of it. The destruction of the evidence does not destroy the thing itself. The circuit court has power to enter the judgment anew, to make a new record, nunc pro tunc, and equity would aid the party if necessary, by compelling a discovery.

The position attempted to be refuted, would in the case of the destruction of the record in an ordinary case, remit the party necessarily to his original cause of action, which might be barred by limitation, and would expose him to many inconveniences.

An action of debt, or scire facias, it is conceived might be sustained on a judgment, notwithstanding the loss of the record, and secondary evidence given of its contents.

The debt is merged in the judgment; the original judgment is extinguished by the taking and forfeiture of the forthcoming bond, and it is insisted, that it cannot be restored to vitality without vacating the bond by the action of the *court*, in some form of proceeding known to the law.

Carleton *et al. v.* Osgood *et al.*

If the plaintiffs, upon the loss of the record, had their election to proceed either upon the bond or upon the original judgment, they are precluded from the latter course now, by having made their election to proceed upon the bond.

As to the second point. The bond was valid and binding as to all obligors except Johnson, and that name was probably put to it by the sheriff, *pro forma* as surety, under the impression that the debt was perfectly secure without him. The conduct of the sheriff was highly reprehensible, and no doubt the plaintiffs could have quashed the bond on motion. But was it a nullity. Could the other obligors have objected to it on that ground? If not, then it was not void. The plaintiffs have elected to treat it as a valid bond, by issuing executions upon it, and cannot now be permitted to regard it as a nullity.

III. The third and fourth assignments of error are to the same point, to wit: that the court erred in quashing the bond in the case of R. H. Osgood & Co., on writ of error coram nobis. If this was error, the plaintiffs cannot take advantage of it, for they are neither *parties* nor *privies* to the proceedings.

The proceedings upon the writ of error coram nobis are not in this record, nor do they properly belong there. It was competent for the court to quash the bond on such a proceeding, on the application of defendants.

If the court proceeded irregularly on the writ of error coram nobis, the error could only be corrected by a direct proceeding to reverse the judgment. It cannot be impeached collaterally. Strangers to the proceeding can never object to mere irregularities.

Again: If the plaintiffs could object to the irregularity of the proceedings on the writ of error, they must show that an error *exists in fact.* This can only be done by the production of the record, which is not before the court.

The principles upon which the case depends seem so well settled, that it has not been thought necessary to refer to authorities.

Mr. Chief Justice SHARKEY stated the case, and delivered the opinion of the court.

The ground of the motion is that the lien of the original judgment in favor of Nelson Carleton & Co. was extinguished or raised

by the forfeiture of the bond, and that the bond taken in the case of Osgood & Co. having been quashed, they were restored to their lien under the original judgment, which was two days younger than that of Nelson Carleton & Co. That the lien of Nelson Carleton & Co. only commenced with the forfeiture of the bond.

The property was sold under both executions, and it is therefore a proper case for the interposition of the court. The right of Osgood & Co. is resisted mainly on the ground that the bond taken under the execution of Nelson Carleton & Co. was absolutely void, because the name of the security was fictitious; and also on the ground that the bond never was returned forfeited, and it is also contended that the forfeiture of such a bond does not raise the lien of the judgment.

The sheriff when he levies an execution on personal property is authorized to let it remain with the defendant, on his entering into bond with sufficient security for its delivery on the day of sale; but the sheriff is not authorized in such cases to take a bond without security. It is only on the condition of getting security that the statute authorizes him to take a bond. It is true, that if the security be insufficient in point of ability, the sheriff may be substituted; this is a privilege to the plaintiff, and it does not follow that the sheriff may take a bond without security. The bond is intended for the safety of the plaintiff, and when forfeited has the force and effect of a judgment, by which the security becomes also liable on a new judgment with the other defendants, and a lien is also given on his property. But if the bond be taken without security, what does the plaintiff gain by the forfeiture? The object of the law is thereby defeated, and a fraud committed on the plaintiff. This, as a forthcoming bond under the statute was void, for want of authority in the sheriff to take it. The sheriff when he made the levy could not legally leave the property with the defendant, unless on the terms prescribed in the statute; and if he did so, the plaintiff's rights could not thereby be defeated. On a bond of this description there can be no necessity for driving the plaintiff to his motion to quash it; he may treat it as a nullity. Surely he may disregard a bond signed by the defendants alone without any security, and a fictitious name cannot change his

Carleton *et al. v.* Osgood *et al.*

right.  In this instance it was disregarded, and execution taken out under the original judgment.  His original judgment is two days older than that of Osgood, and as the lien has not been interrupted, it is entitled to prior satisfaction; for which reason the judgment must be reversed, and the sheriff ordered to appropriate the money in his hands, made by a sale of property under these executions, first to the satisfaction of that in favor of the plaintiffs in error.